PER CURIAM.
This case arises out of a power struggle among the board of directors of the Birmingham Area Legal Services Corporation (BALSC). On December 6, 1979, following an extensive investigation into employee grievances concerning the inadequate supervisory capabilities of the executive director, Henry Thompson, the board of directors voted to terminate Thompson’s duties.
Thompson was, however, given the opportunity to resign. Thompson and his supporters immediately began efforts to have Thompson reinstated. No evidence of the discharge was ever recorded in the official *265 board minutes. Two reappointments were solicited and two new agencies were appointed as selecting agencies to fill two existing vacancies. As a result, Thompson was subsequently reinstated. In protest of the allegedly unlawful reinstatement, three directors, Chervis Isom, Manning Warren, III, and Robert McLean submitted resignations. After meeting with their respective appointing agencies, however, each was convinced to withdraw his resignation and to accept reappointment. Thereafter on February 7, 1980, the regularly established monthly meeting day, the three directors presented their letters of reappointment prior to any business being conducted. Eight directors were present — three who were unquestionably valid; two who have been allegedly replaced; and the three who had earlier submitted resignations. The two replaced directors abstained from voting pending confirmation of their representation by their respective organizations. All actions of the board at the January meeting recognizing new directors and rescinding Thompson’s discharge were rescinded. New officers were elected — Robert McLean, President; Houston Brown, Vice President; and Manning Warren, Secretary/Treasurer.
On February 11 BALSC filed a bill for declaratory judgment to have the board and officers as determined by the February 7 meeting recognized as the lawful directors and officers. Almost simultaneously, the Thompson group filed a quo warranto petition challenging the status of the newly elected officers. Both actions were filed in equity and were consolidated and tried as such. Final judgment was entered for BALSC with further instructions for by-law revisions prior to the recognition of any new directors.
Three issues are presented for review:
1. Was the consolidation of the declaratory judgment and quo warranto actions error?
2. Was there a quorum for the February 7 meeting of the directors?
3. Was there error in admitting evidence concerning evidence of Thompson’s termination as Executive Director?
(1)
To the first issue we answer no. The first sentence of the trial court’s final judgment begins with these words: “These actions ... in the nature of a bill for declaratory judgment and ... in the nature for a writ of quo warranto . . . and consolidated by consent....” The appellants, by consenting to the consolidation, cannot complain now. Moreover, even if they had not consented, the trial court could have consolidated the cases to avoid unnecessary costs or delay. Rule 42, ARCP.
(2)
Under the by-laws, the number of directors constituting a quorum was five. (There were six qualified directors present.) At the meeting, here in dispute, the court found that under the testimony all directors were either present or had had notice of the meeting. Therefore, the trial court did not err.
(3)
As to the third issue, we answer no. The trial was heard by Judge Barber sitting without a jury; the evidence was conflicting, and therefore, under the ore tenus rule, he is to be affirmed unless his findings are palpably wrong or manifestly unjust. Our review of the evidence leads us to conclude that the trial judge did not commit error.
The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C. J„ and FAULKNER, AL-MON, EMBRY and ADAMS, JJ., concur.